Good morning. May it please the Court, my name is Alan Bentley. I represent the appellant, Fred Hankins. I'd like to reserve one minute of my time to respond to matters that may be raised by government counsel. I want to cover three points in my presentation this morning. First, the question of whether Hankins' trial counsel agreed or acquiesced in the proposition that a government expert could be called as a rebuttal witness. And third, the inapplicability of the plain error standard in light of the unusual local rule in the District of Alaska precluding the filing of a reply in a criminal motion. If time permits, I would also like to address the Schwartz case mentioned in the government's Rule 28J letter, which was received yesterday. Discovery. This case was in every respect a pretrial disclosure train wreck. The pertinent portion of the report by the government's forensic computer expert, Dr. Hay, contained color coding that Dr. Hay had placed on the data. The coding was in the form of blue background behind some of the data points. The code meant that the ECC Globe software had identified the data point as invalid for navigation. This can be seen at page 265 of our excerpt. In Dr. Hay's report, the blue tinting was only explained as meaning that the data was not visible through the Microsoft Access user interface. And you can see that on page 7 of the government's brief where they incorporate that portion of the report. Well, there was an ambiguity, but this was identified before trial. Did you move for a continuance? Yes. Let me go to that point. Defense counsel moved for a continuance on July 19th, the Thursday before the trial, without knowing about the undisclosed invalid data points. And that motion was denied. I mean, the thing that was confusing to me is it seemed like the government expert was a little sloppy. He had to annotate and correct his errors when he was testifying. But didn't you, didn't the defendant have access to the same computer information? And so they could have determined, an expert looking at the same computer information could determine what the invisible data meant. So it wasn't clear to me where the mistake was. Well, he was misled into retaining the wrong expert. His expert was a GPS locational data interpretation expert who proceeded on the assumption that all of the data in the report that was disclosed by the government's expert was valid. So he didn't know what the invisible, what it meant that it was invisible. But that doesn't seem to be, that seems to be the defendant's problem. You know, he could have interpreted the same original material and reached his own conclusions. The fact that he decided not to seemed more like a strategic issue. That's what I was confused about. Well, I think he made a judgment that he had retained an expert who was prepared to testify that certain of these data points yielded highly anomalous results. And under those circumstances I don't think he can be faulted for failing to retain a second expert to delve into the data. When he discovered the error, did he then say, I need more time because I want to retain the right kind of expert? No. End of case, right? But that was in the middle of the trial, Your Honor, and that comes against... Well, no, he discovered, this was disclosed before trial. I have to disagree. Wasn't there an email disclosing this a couple of days before trial? There was an email on a Saturday night to counsel. That appears to be the only manner in which this information was disclosed. Okay, so what are you disagreeing with? I said, wasn't this disclosed before trial? And you said, no, until the middle of trial. You said there was an email. Didn't the email disclose this before trial? Yes, it did, Your Honor. Okay, stop. So at that point, did defense counsel, were you defense counsel? No, Your Honor. Okay, the defense counsel then moved the district court and said, look, we've just discovered that the government's expert report means something else than we thought it means. We want extra time. We want a continuance so we get our own experts. Did that happen? I guess what I'm trying to say is... There is no answer to my question. That did not happen. Okay, so why isn't that... But if I may, the court is assuming that the email was an effective means of communicating the new information about the expert's report. There's nothing in the record to show that defense counsel received that email or read that email prior to trial. And everything he said during the trial, when this came out, reflected that he had not seen it. Now, I would agree... I'm sorry, I'm sorry. So you're not disputing the email contained information? I'm not disputing that. Okay, the dispute is whether or not the defense lawyer actually saw it. Correct. And who's on whose end? Well... I mean, that's... You know, if the lawyer going to trial doesn't read his emails, I mean, this is how people communicate with each other. Judge Berger. The... One... One point that mystified me, and that seems to be relevant to whether there was pressures from all of this, is that when the prosecutor's expert testified, he was quite clear about how he was now interpreting these data points as meaning... as not meaning that... as showing actual locations. And then the defense expert gets up and pretty much ignores what he'd said. And I don't know why that has anything to do with what kind of an expert it was. I mean, I could have done it. So the problem didn't seem to be with the kind of an expert. The problem seemed to be that this expert wasn't listening at all to what the prosecutor expert said and went ahead and testified as if he'd never said any of it. And that's true. And the prosecutor is basically educating the defense expert. And I can't... This... That's why I characterize this as a train wreck, because the defense was based on this expert. This was the gentleman who was going up to Seattle... But what I'm saying is that the notion that what was wrong with this expert was that he was the wrong kind of expert, as opposed to just a bad expert, doesn't seem to have been borne out. Well, he was the wrong kind of expert in that he could not really comment on the invalidity conclusions that the prosecutor's expert had raised. And if I can go back to Judge Kaczynski's comments about whether this was raised on time, our point is that Rule 16c requires the government. It imposes a continuous duty on the government to bring promptly to the attention of the court and opposing counsel new information about its expert. And in this case, there were two pretrial hearings on the Thursday and the Friday before trial. This is after Wednesday when the government's expert provided this new information, and there was no mention of this new information in either of those hearings. Friday, they talked. The defense counsel asked for a continuance. This would have given the judge a reason to continue the case had he known there was going to be a change in the expert. It's not really new information. I mean, he said those data points are different. He just identified them as not visible. As opposed to saying those were false data points. I think there's a big difference between saying these are data points that would not have been visible and saying these are data points which the computer tells us were invalid. They may be different, but you said they have to update on new information. It's not really new information. It's another way of characterizing information that was there. Well, I feel there's something semantic to that. I do think there's a difference. If he says this is not visible, he's not denying the validity of it. If he says it's not valid, he is. His testimony was about the data that was valid in his view. He said here's what the data that I extracted from this equipment shows. That was his testimony. Then he says this invisible stuff is startup points. It's not reliable. It's not what we look at. But the defense expert didn't understand that. He didn't understand what the implications were. Testifies, well, this data is unreliable, and so therefore cast doubt on all of the report that the expert made. But if there was an explanation for this unreliable data, then that would change my view. And so they bring the government expert back and says, well, just like I said, it was unreliable. The defense expert was a waste. And obviously different counsel might have tried it differently. But the government had everything it needed from the concessions that the defense expert made in his testimony on the stand, plus what Dr. Hay, the government's expert, had testified to on their direct case. So to allow Dr. Hay to come back, testifying by phone from the Newark airport, and present a prolonged PowerPoint showing, which is basically a closing argument for the government, everything in that PowerPoint could have been argued to the jury without having the so-called rebuttal. Thank you. All right. We're out of time. Thank you. Good morning. My name is Stephen Cooper, representing the United States. I think it's, of course, important to keep in mind what the issues are on appeal. The issues are whether the court erred in admitting the rebuttal testimony. What's the standard? That's abusive discretion, and it's called wide discretion by the authorities. And then secondly, whether the court erred in denying a motion for new trial on a ground that was not asserted in the district court and without questioning the grounds on which the district court did make its ruling. And then the third issue is whether counsel was ineffective because he didn't take measures to hire a computer. Do you think those issues are adequately addressed in your brief? They are adequately, I think, answered in the brief. Thank you. I think you specifically asked for this argument, so perhaps we should have it. Well, there were just one or two things that needed to be looked at. I think there's some confusion as to what the issues were, and I think the first point of confusion is what the judge had before him at the time he ruled on permitting the rebuttal testimony to take place. He did not have a Rule 16 issue before him. I've scoured the record. Rule 16 was never mentioned at that time. Rule 16 was never mentioned the first time Dr. Hay testified to the additional findings relating to the invalidity of the startup points. All that he said was, this is new information. The judge said, what do you want me to do about it? He gave him what he wanted done. He said, I want the opportunity to consult my computer expert, which was not Mr. Haflinger, and the court granted it. So that issue is resolved. That was before his expert testified? That was while our expert had begun to testify on Day 2. Their expert testified on Day 6, practically a week after that, and had no knowledge of anything Dr. Hay had testified to. Now, the court didn't consider a Rule 16 violation because it was never mentioned. Okay, so we shouldn't be judging anything that Judge Holland decided relating to the permissibility of rebuttal testimony when there was never anything said about a Rule 16 violation to him at the time. All that was mentioned in the first instance in the case in chief was, this is new information. I need to consult with my expert before I cross-examine. When the rebuttal came up, the only objection was, Dr. Hay is going to criticize Mr. Haflinger for not knowing that some of the data he relied on had invalid latitude and longitude in it. But that's unfair. How was he supposed to know? It wasn't in Dr. Hay's report. That was his only objection. This all seems a complete red herring to me, is that he did know because Dr. Hay had testified to it, and then the defense expert gets up and he just ignores it. So perhaps there was a discovery problem, but I don't understand. It seems to me the rebuttal thing, and it's interesting that it wasn't argued at all here, probably for that reason. It just doesn't seem to have anything to it. So, in essence, it is not a discovery issue. Discovery was never asserted as the problem with regard to Dr. Hay's testimony. But it was asserted with regard to the new trial. With regard to the new trial, it was, but that's not been appealed. The only thing that's been appealed is a new issue that the court never considered, and that is that in hindsight somehow the district court is supposed to have discerned that Dr. Hay's testimony was so prejudicial and required a vacating of the result, the verdict, and a new trial. But that was based on the assumption that – I'm sorry, I'm not sure I understand what you said was appealed. I thought that he did raise the new trial – If we look at this part of the – Wait just a minute. I thought that the defendant did raise in the new trial motion the contention that there was a discovery violation and that the result should be vacated for that reason. He did. He did. But he hasn't raised it in this court under that heading. That's what I understood he was raising in his new trial argument. He hasn't – he did not raise it in his opening brief in this court. He recited the historical fact that the court – that's on page 46 through 48 of the opening brief. He recited the historical fact that he had raised a newly discovered evidence issue and that he had raised a Rule 16 issue in the district court and that the court had resolved those issues against him. He then did not assert either one of those as a ground to find error in the denial of his new trial motion. But he went on to a new argument, which is on pages 47 and 48. And that is that the trial court, when it permitted the rebuttal testimony, the trial court had not received an offer of proof and didn't know what was going to be covered. It's not a fair statement, but that's what it says. And then the trial court also did not know how the government would use Dr. Hayes' rebuttal in closing argument. And finally, it didn't know until after the jury's verdict came in the full impact. So it's saying the court couldn't have known at the time it ruled how prejudicial this was, this testimony, and therefore in hindsight should have granted a new trial because of the testimony. But then on the top of page 48 is the mistake on which that whole argument is based. He says the jury found Hankins guilty on the May halibut trip after hearing from Hayes about the assertedly irreconcilable differences between the ECC globe data points and the daily fishing log. And in our answering brief, we pointed out that Dr. Hayes gave no such testimony. He only pointed out the problem with using data points that had invalid latitude and longitude in them to draw a conclusion about unreliability of the data. He did not go and say take a look at Hankins' daily fishing log and you'll find that all these points that we've discovered were in 3A and he fished in, and he's claimed he fished in 3B, therefore his statement that he fished in 3B is wrong. He didn't give any testimony like that. And that's the only basis on which the defendant, Mr. Hankins, has come before this court and asked for a reversal of Judge Holland's ruling on the trial motion. Thank you. Case just argued. We'll stand submitted.
judges: Kozinski, Berzon, Ikuta